**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chasmind David Miller,<br><br>Plaintiff,<br><br>v.<br><br>LHM Corporation ACJ, *et al.*,<br><br>Defendants. | No. CV-19-04350-PHX-JJT<br><br>**ORDER** |

On March 23, 2020, the Court entered its second Order to Show Cause why this matter should not be dismissed for Plaintiff's failure to prosecute it. (Doc. 89.) Plaintiff has failed to show such cause. The Court therefore will dismiss the matter and order the Clerk of Court to close the case.

As the Court has repeatedly warned Plaintiff, the Court may dismiss this action for a failure to comply with the Court's Orders under Federal Rule of Civil Procedure 41(b). *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (holding that the district court may dismiss an action for failure to comply with any order of the court), *cert. denied*, 506 U.S. 915 (1992). "The duty rests upon the plaintiff at every stage of the proceeding to use diligence and to expedite his case to a final determination." *Hicks v. Bekins Moving & Storage Co.*, 115 F.2d 406, 409 (9th Cir. 1940) (internal quotation omitted); *see also Fid. Phila. Trust Co. v. Pioche Mines Consol., Inc.*, 587 F.2d 27, 29 (9th Cir. 1978). "It is within the inherent power of the court to *sua sponte* dismiss a case for lack of prosecution." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984) (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630 (1962)).

In determining whether a plaintiff's failure to prosecute warrants dismissal of the case, the Court must weigh the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). "The first two of these factors favor the imposition of sanctions in most cases, while the fourth factor cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). A plaintiff's *pro se* status does not provide an excuse for him to fail to comply with Scheduling Order deadlines and Court rules. *See Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (noting that *pro se* litigants are not excused from following court rules); *Carter v. Commissioner of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986) (same).

At the outset of this matter, the Court explicitly warned Plaintiff that if he chose to proceed as a self-represented party, he "will be held to comply with all Court Orders in this matter, as well as the Federal Rules of Civil Procedure, the Local Rules of Practice for the District of Arizona, the Federal Rules of Evidence and any other applicable federal rules." (Doc. 20.) The Court also advised Plaintiff that as a self-represented party he would have to appear at all proceedings related to the matter, and failure to do any of the above "may result in the Court imposing sanctions against him for such failure, up to and including entry of [] dismissal, as appropriate." (Doc. 20.)

At the Rule 16 Scheduling Conference in this matter, upon learning for the first time that Plaintiff had not complied in full with one of the Court's Orders, the Court took no action but reminded Plaintiff that he was required to follow all Court Orders and schedule deadlines and if he was unable to comply with all or part of an Order or deadline he should document what he was able to do, and who he communicated with. (Tr. 10/21/19 p. 77:11-19.) At that hearing, defense counsel raised to the Court for the first time that they were repeatedly unable to contact Plaintiff at any of the numbers or email addresses he had given

them, and the Court required the parties to meet immediately after the hearing and for Plaintiff to provide counsel working contact information and to notify counsel within 48 hours if that information changed thereafter. (Tr. 10/21/19 pp. 89-90.)

At Defendants' request and with Plaintiff's agreement, the Court took the extraordinary step, and commensurate effort, to arrange for Plaintiff's deposition to be taken on January 29, 2020, at the Sandra Day O'Connor United States Courthouse. Defendants served a Notice of Deposition on Plaintiff for that date. (Doc. 62.). Plaintiff failed to appear (Doc. 74), incurring wasted time both of Defendants' counsel, an independent court reporter, and a videographer. Thereafter, the Court entered its first Show Cause Order in the matter, requiring Plaintiff to demonstrate "why the Court should not dismiss this matter for failure to prosecute and failure to follow the Court's Orders, including Scheduling Order, as the Court advised Plaintiff was mandatory." (Doc. 75.)

Plaintiff filed a Response to that Order on February 18, 2020, stating that he "became ill the night before the deposition was scheduled," and "would not have been able to properly give deposition." (Doc. 78.) Plaintiff also stated he "tried to contact Defendants by phone and was unable to do so," and he then "emailed Defendants to reschedule deposition." (Doc. 78.) Defendants filed a Response thereto, indicating that neither of them ever received any telephone message from Plaintiff, on the night before the scheduled deposition or any other time, indicating he would not attend, and only one Defendant—GEICO—received an email to that effect.[1] (Doc. 80.) That email was sent to GEICO counsel's office account approximately 30 minutes before the time Plaintiff's deposition was to begin, and counsel did not timely receive it because they were all at the deposition site already.

As a result, counsel wasted their time preparing for, traveling to and waiting to execute the deposition; additionally, a court reporter and videographer appeared and accrued charges for their time traveling to and appearing for the deposition. As the Court

---

[1] Defendant LHM Corp.'s counsel did not directly receive such email because Plaintiff apparently sent it to an errant address; GEICO's counsel forwarded a copy of the email eventually received to LHM Corp.'s counsel.

pointed out in its Order addressing this issue, almost all of these expenditures of time and money could easily have been avoided if Plaintiff, upon becoming ill the night before, had messaged counsel that night, or even earlier the next morning.

While the Court still harbored questions about inconsistencies in Plaintiff's explanations to it and to each Defendant about what happened, it concluded that dismissal of the matter at that point was too harsh a sanction, and instead sanctioned Plaintiff by requiring him to reimburse Defendants for the cost of the court reporter and videographer. (Doc. 81.) The Court also ordered Plaintiff to take four actions to address the issues he had caused.

First, the Court ordered Plaintiff to immediately confer with defense counsel to confirm Plaintiff had telephone numbers for each of them on which he could actually reach counsel during reasonable hours or leave a message that they would receive in short order. (Doc. 81.) This would eliminate any situation where Plaintiff would be unable to advise the defense about scheduling issues and respond to discovery issues in real time or nearly so in the future. Second, the Court ordered Plaintiff to return all telephone or other communications from defense counsel within 24 hours of counsel leaving a message for him. (Doc. 81.) This would address repeated issues raised to this Court by defense counsel about Plaintiff's non-responsiveness to inquiries about late or incomplete discovery and setting conferrals. Third, the Court ordered Plaintiff to provide Defendants' counsel with multiple dates and times he would be available to sit for his deposition. (Doc. 81.) And fourth, the Court ordered Plaintiff to engage in discussion with Defendants' counsel about his ability to pay the court reporter and videographer costs the Court would impose. (Doc. 81.) The Court imposed this last requirement so the parties could evaluate Plaintiff's financial condition and whether a payment plan of a smaller amount each month would achieve the Court's purpose of cost shifting to the responsible party without excessively damaging that party's ability of meet daily financial responsibilities.

On March 19, 2020, two weeks after the Court purged the show cause order and ordered Plaintiff to take the additional steps above, Defendant LHM Corp. filed a Notice

of Plaintiff's Non-Compliance with Court Order. (Doc. 88.) Counsel advised that Plaintiff continued not to return phone calls or messages from counsel, which precluded counsel from addressing Plaintiff's alleged failures to provide certain discovery to Defendants timely or at all. Counsel also brought to the Court's attention that while Plaintiff had stated multiple times that certain discovery responses had been provided by U.S. Mail in some cases and email in other cases, Defendants had not received the responses in any form, they were weeks to months late, and Plaintiff was non-responsive to counsel's attempts to determine what had happened or where discovery responses were. Finally, counsel stated that in compliance with the Court's Order of March 4, the parties had agreed to meet and confer by telephone on March 18, 2020, about Plaintiff's ability to pay the court reporter and videographer costs for the deposition false start, and then counsel confirmed the meet-and-confer with Plaintiff on March 16; on March 18, however, Plaintiff did not call in and counsel could not reach him. Counsel provided contemporaneous documentation to support each of these new instances of Plaintiff's failure to comply with the Court's Orders. (Doc. 88 Exs. 1-4.)

Upon receipt of Defendant LHM Corp.'s Notice of Plaintiff's Non-Compliance and documentary support, the Court issued the second Order to Show Cause, requiring Plaintiff to explain, by no later than March 27, 1) why he did not participate in the scheduled and confirmed March 18 teleconference with Defendants' counsel regarding deposition cost reimbursement; 2) why he had not delivered the responses to Defendants' Requests for Admission when they were due in the first instance; and 3) why he then did not respond when Defendant's counsel reached out to him multiple times, via letter, phone and email to follow up on the missing discovery and other delinquent issues. (Doc. 89.) Plaintiff failed to timely respond to the second Order to Show Cause.

On April 3, 2020, Defendant GEICO filed a Joint Notice of Plaintiff's Failure to Comply with Discovery Orders. (Doc. 90.) In the Joint Notice, Defendants reported that after the Court's latest OSC, Plaintiff emailed Defendants' counsel stating he was unaware he was to call in to the teleconference on March 18, that counsel had not provided him a

phone number to call in, and that Plaintiff had asked for but never received confirmation of the teleconference. Defendants attached the email thread in which Plaintiff's referenced message appears. (Doc. 90 Ex. 1.) In that thread, **literally** just below Plaintiff's statement that he did not get confirmation of the call or any dial-in information, is the March 16 email to Plaintiff from defense counsel confirming the March 18 call and providing the call-in number. (Doc. 90 Ex. 1.) Plaintiff was responding to the confirmation email which bore the dial-in number, to tell counsel he did not have notice, confirmation or the dial-in coordinates.

Additionally, Defendants noted that Plaintiff represented to them and to this Court in his Notice of Service of Discovery (Doc. 84)—which he physically came to the courthouse and filed into the docket in this matter on March 10, 2020—that he had as of that date "provided" his responses to Defendant LHM Corp.'s Requests for Admission. (Doc. 90.) Yet the postmark on the actual responses received by Defendant indicate they were not mailed until April 1, 2020, and received April 3, 2020. If the responses were not mailed until April 1, then Plaintiff's March 10 statement to the Court that he complied with his discovery obligations and "provided" the responses as of that date was false. As importantly, it was false at a time when Plaintiff had just received a second or third chance from the Court with the purging of the first Order to Show Cause in this matter, and his credibility, diligence and compliance with the Court's orders was very much a determining factor in the Court's apprehension of the matter moving forward.

As of April 6, Plaintiff's deadline to file a responsive memorandum to the Court's second OSC had passed by nine days, and the Court was entitled under the rules to impose sanctions up to and including dismissal of the matter. *See* LRCiv 7.2(i) (" . . . if the unrepresented party or counsel does not serve and file the required answering memoranda . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily"). In fact, the Court had drafted an Order doing just that and was preparing to enter it when Plaintiff filed a Response nine days late. (Doc. 91.) Even if the Court considered Plaintiff's very untimely Response, it is

insufficient to show cause why this matter should not be dismissed for failure to prosecute and to comply with the Court's Orders and applicable rules.

In the late Response, Plaintiff repeated that he was unaware of the teleconference and was not provided with call-in information. Plaintiff also stated that he was without telephone service on March 18, and later stated that he was in custody in the Maricopa County Sheriff's Towers Jail on that date. (Doc. 91.) As to the discovery response timing discrepancy, Plaintiff repeated that he sent the responses to Defendant's Request for Admission on March 10, 2020, "upon being released from the Towers Jail." (Doc. 91. At 2.)[2] Later, although the Response was somewhat unclear on this point, Plaintiff appears to state that he was unable to afford to make copies of the documents to email them to Defendants, as Defendants had requested, in lieu of mailing them. These points simply do not add up.

First, Plaintiff's assertion that he was unaware of the March 18 teleconference, could not get confirmation for it, did not know he was supposed to call in, and did not have any call-in instructions, is directly contradicted by the very next entry in the email chain Plaintiff himself used to explain away to defense counsel his failure to appear. Just inches directly below Plaintiff's assertions was the email confirming to him the March 18 teleconference—a date he chose—and giving starkly clear dial-in instructions and codes. (Doc. 90 Ex. 1.)

Second, in Plaintiff's representation to the Court that he was in jail on the day of the conference call is problematic. As an initial matter, Plaintiff never mentioned being in custody to defense counsel when he emailed them to explain why he did not call in. Additionally, ignorance of the teleconference or how to join it is qualitatively a very different reason than a complete incapacity to call in due to incarceration. One would think if Plaintiff were trying to explain his absence from an agreed commitment, he would include what may be the most compelling circumstance keeping him from it. Moreover,

---

[2] This timeline is inconsistent with Plaintiff's previous statement that he was in custody as of March 18, 2020, and Plaintiff provides no records to support his incarceration dates. However, he later states he was released at 9 p.m. on March 22, which could be consistent with his assertion that he was in custody March 18.

Plaintiff has provided no support for his assertion of incarceration in the form of arrest, court or jail records, or the like. Such documentation would have been helpful to establish not only the fact of incarceration but also the dates thereof, which the Court notes above are unclear and contradictory as reported in different passages of Plaintiff's response memorandum.

Third, Plaintiff fails to address at all the concern raised by counsel that he has misled the Court by representing he complied with his discovery requirements as of March 10, when the documentary evidence shows he did not mail the RFA responses until more than three weeks later on April 1. The Court in its prior Orders attempted to clarify for Plaintiff the need to avoid credibility contests by being able to provide corroboration for claims that Plaintiff had met his obligations. It took the extraordinary step of requiring Plaintiff to acquire valid telephone numbers of counsel that would result in counsel returning contact quickly, precisely so no one in the future could claim they had no way of getting hold of an opponent. It required Plaintiff to return all messages within 24 hours of receipt similarly to avoid competing claims of delay and argument over how long was too long to return a call.

This roadmap was to no avail. In his Response, Plaintiff has no explanation for why his RFA responses were not postmarked until three weeks after he says he mailed them, and all of the corroborating steps the Court foresees he could have taken he explains away: it was too expensive to send the discovery responses via a postal delivery class that was trackable; and it was likewise too expensive to make copies for email delivery, which email would have borne a verifiable delivery date and time. The reasoning of this last explanation escapes the Court, which fails to understand why copies of discovery need to be made in order to email them to an opponent. The Court concludes Plaintiff has consistently and deliberately chosen his modes of operation in this matter specifically to avoid the kind of easily and directly verifiable records that would show exactly what was done when. And that detracts from his credibility when he offers yet more excuses for his latest non-compliance.

Finally, and perhaps most importantly, consistent with the last point above, Plaintiff does not explain why he has taken no action to rectify discovery, deposition rescheduling, or reimbursement conference issues since his release from Towers Jail on March 22—over two full weeks ago. Even if the Court credited each of Plaintiff's explanations—that he had been in jail until March 22, that he had been homeless before and after his incarceration, that his telephone had been disconnected, and that he had no place to receive mail or email until he reconciled with his father on April 4—Plaintiff has not addressed why he has done nothing to meet with counsel since March 22, or thereafter, about setting a new deposition date, discussing a payment plan for reimbursement, or rectifying discovery issues. Even now, with all previously identified impediments gone, Plaintiff continues his non-compliance with the Court's Orders and schedule. It is precisely this continued non-action that persuades the Court that a sanction less harsh than the one the Court previously rejected—dismissal of the action—would be unsuccessful in bringing about compliance.

The Court thus has considered less drastic measures. It concludes—in light of the previous warnings, second chances and prescriptive orders it has provided, which have been met by more and different flavors of non-compliance with excuses, all resulting in a lack of progress in this matter and increasing the waste of time, effort and money on Defendants' part in meeting their own obligations—that those less drastic measures would be ineffective in gaining compliance. Dismissal of the action for non-prosecution is thus warranted.

IT IS THEREFORE ORDERED dismissing this matter for failure to prosecute and for repeated failure to comply with the Court's Orders.

IT IS FURTHER ORDERED denying all pending motions (Docs. 40, 49) as moot.

IT IS FURTHER ORDERED that, commencing 60 days after entry of this Order, Plaintiff shall pay $25 per month for 12 months to Defendants as reimbursement for wasted expenses that occurred when he failed to appear for his deposition in this matter. The first 6 payments, totaling $150, shall be made to Defendant GEICO through its counsel; the final 6 payments, totaling $150, shall be made to LHM Corp. through its counsel.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 14th day of April, 2020.

_____
Honorable John J. Tuchi
United States District Judge